UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY ECONOMUS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　　Defendants. | Case No. 18-cv-01071-HSG<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' AND PLAINTIFF'S MOTIONS TO FILE UNDER SEAL**<br><br>Re: Dkt. No. 99, 100, 120 |

Pending before the Court is the motion for summary judgment brought by Defendants City and County of San Francisco (the "City") and Flint Paul ("Officer Paul," and collectively with the City, "Defendants"). Dkt. No. 99. The parties have also filed administrative motions to file under seal. Dkt. Nos. 100, 120. Although the Court finds that there is a genuine dispute of material fact as to whether Officer Paul's conduct violated the Constitution, it also finds that Officer Paul is entitled to qualified immunity as a matter of law. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's Fourth Amendment claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state claims, and **DISMISSES** those claims without prejudice to their reassertion in state court.[1] The Court also **GRANTS IN PART AND DENIES IN PART** Defendants' motion to file under seal in support of their motion for summary judgment, and **DENIES** Plaintiff's motion to file under seal in support of his opposition to summary judgment.

---

[1] On March 29, 2019, the parties filed a stipulation dismissing Plaintiff's battery claim with prejudice, Dkt. No. 156, which the Court granted on April 1, 2019, Dkt. No. 157.

## I. BACKGROUND

### A. Procedural History

Plaintiff Anthony Economus commenced this action on February 20, 2018. Dkt. No. 1. He filed his second amended complaint on November 2, 2018, Dkt. No. 45 ("SAC"). Defendants moved for summary judgment on January 31, 2019. Dkt. No. 99 ("Mot."). Mr. Economus filed his opposition to the motion on February 14, 2019, Dkt. No. 128 (corrected) ("Opp."), and Defendants filed their reply on February 21, 2019, Dkt. No. 123 ("Reply"). The Court held a hearing on Defendants' motion on March 14, 2019. Dkt. No. 136.

### B. Factual Background

The Court briefly recounts the facts viewed in the light most favorable to Plaintiff, the non-moving party, as it must at the summary judgment stage. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

On July 11, 2017, Mr. Economus participated in an annual downhill skateboarding event at Dolores Park in San Francisco, California. SAC ¶ 11. Dolores Street is a hill next to Dolores Park that skateboarders like to "bomb" down, a term used when skateboarders go down a hill "too fast to stop [themselves]." Dkt. No. 128-10, Ex. 10 at 41:12–16. Dolores Street is a two-way street with a divider down the center. Dkt. No. 128-4, Ex. 4 at 37:13–20.

Officer Paul was also present at Dolores Park that day, responding to a dispatch requesting available units to assist with an incident at Dolores Park. *Id*. 33:8–14. A skateboarder had crashed, but because there was a large crowd gathered, paramedics were having difficulty transporting the injured individual out. *Id*. 33:15–23. By the time Officer Paul arrived at the scene, hundreds of people were on Dolores Street between 18th and 20th Streets. *Id*. 37:2–9. The crowd was not aggressive towards the police officers, just indifferent. *Id*. 39:8–14. Officer Paul stated that he wanted to contain the situation while attempting to figure out if the officers were going to shut down or facilitate the event. *Id*. 43:19–44:1.

When Mr. Economus arrived at the skateboarding event, he decided to bomb down the hill. Dkt. No. 128-10, Ex. 10 at 70:4–71:6. On his way down, he noticed a police car in the middle of

the intersection at the bottom of the hill. *Id*. Mr. Economus was going too fast to stop and thought he could make it through the gap between the police car and the sidewalk. *Id*. Mr. Economus then saw Officer Paul step out into the middle of the intersection, blocking the gap that Mr. Economus was attempting to skate through. *Id*. 71:21–74:10. Officer Paul turned towards Mr. Economus, stopped, and collided with him, knocking Mr. Economus off his skateboard. *Id*. The left side of Officer Paul's body made contact with Mr. Economus's left shoulder. Dkt. No. 128-10, Ex. 10 at 72:1–15. No words were exchanged between the parties prior to the collision.[2]

Both parties sustained injuries as a result of the collision. Mr. Economus hit the hood of the police car and fell to the ground. Mot. at 5; Opp. at 8. He was initially nonresponsive and does not remember if he responded to the officers' offers to call an ambulance. *See id*. He was eventually helped out of the street by friends and strangers and taken to the hospital. *See id*. Mr. Economus alleges that as a result of the collision, he suffered torn ligaments, multiple fractures in his ankle, and a gash in his knee that required stiches. Opp. at 8. Officer Paul also suffered injuries and sought medical attention. Mot. at 4.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. And a dispute is "genuine" if there is evidence in the record sufficient

---

[2] Defendants concede that there is a disputed fact as to whether Officer Paul moved his shoulder deliberately prior to the impact, as a result of the impact, or deliberately after the impact (the "shoulder check"). Mot. at 4 n.2. Defendants contend that Officer Paul's shoulder moved as a result of the impact. *Id*. Plaintiff's arguments are inconsistent as to when Officer Paul moved his shoulder. *Compare* SAC ¶ 15 ("Sgt. Paul leaned over and into Mr. Economus' path as he passed by him and used his shoulder to knock Mr. Economus off his skateboard."), *with* Opp. at 16 ("Still, even when Plaintiff managed to avoid the officer, Defendant Paul used his shoulder and jabbed it into Plaintiff's back that knocked him from his board"). For purposes of their summary judgment motion, Defendants assume that Officer Paul moved his shoulder toward Mr. Economus before the impact, which was Plaintiff's initial theory in the SAC. Mot. at 4 n.2. The video evidence is inconclusive, but the Court, in deciding this summary judgment motion, finds that the timing of the "shoulder check" does not change its analysis.

3

for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275,

4

1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

### B. Discussion

The SAC alleges six causes of action against Defendants related to the collision. SAC ¶¶ 21–58. The claims remaining at issue are a Fourth Amendment claim against Officer Paul for excessive force, a negligence claim against Defendants, and a Bane Act violation against Defendants.[3] Mr. Economus seeks general damages, as well as punitive damages and reasonable attorneys' fees. SAC ¶ 14.

The parties are reminded that this Order does not constitute findings of fact or a prediction of how a jury might assess the evidence at trial. Rather, because Defendants have moved for summary judgment, this order evaluates whether there are genuine disputes of material fact that preclude Defendants from obtaining judgment as a matter of law. *See Tolan*, 572 U.S. at 565 (counseling that the "judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial") (quotations omitted).

#### i. Fourth Amendment Claim

The Court first addresses the Fourth Amendment claim of excessive force. Under the Fourth Amendment, Plaintiff has the right to be free against "unreasonable searches and seizures." U.S. Const. amend. IV. It is undisputed that there was no search here. The inquiry is whether, drawing all inferences in favor of Mr. Economus, there is a genuine dispute of material fact as to whether there was a seizure and, if so, whether that seizure was unreasonable because it constituted a use of excessive force.

#### 1. Unlawful Seizure

Under the Fourth Amendment, a seizure occurs "[w]henever an officer restrains the freedom of a person to walk away." *Brower v. Cty. of Inyo*, 489 U.S. 593, 595 (1989) (citation and quotations omitted). Violation of the Fourth Amendment requires an "intentional acquisition

---

[3] Mr. Economus does not oppose Defendants' motion for summary judgment on the *Monell* claim, and the Court thus **GRANTS** the motion as to that claim. *See* Opp. at 22.

5

of physical control." *Id*. at 596. A seizure may occur even if the person ultimately restrained in his freedom was not the original target of the "detention or taking," so long as the acquisition of physical control itself is intentional. *Id*. The Supreme Court has held that:

> It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Id*. at 597 (emphasis in original).

Defendants contend that this case is not like *Brower* because it is "*not* a roadblock case … [i]nstead, this case involves an accidental collision that was *not* preceded by any pursuit." Mot. at 6–7. In *Brower*, plaintiff Brower was killed when he crashed into a roadblock that crossed both lanes of the highway. *Id*. at 594, 598. The district court and Ninth Circuit both held that there was no seizure because Brower had a number of opportunities to "stop his automobile prior to impact," and "his freedom of movement was never arrested or restrained" prior to the collision. *Id*. at 595 (quotations omitted). The Supreme Court rejected these arguments and held that the fact that Brower was "meant to be stopped by the physical obstacle" was enough to establish that there was a seizure. *Id*. at 599. It also held that there was no difference, for purposes of the seizure inquiry, between a roadblock designed to give the oncoming driver "the option of a voluntary stop," and one meant to produce a collision. *Id*.

Based on the Court's review of the evidence and drawing all inferences in favor of Plaintiff, the Court finds that there is a genuine dispute of material fact as to Officer Paul's intent. That is, it is reasonably in dispute whether Officer Paul moving to the middle of the intersection was somehow an "accident," or whether he instead intentionally acted as a physical obstacle to stop Mr. Economus. *See Brower*, 489 U.S. at 597. Mr. Economus testified at his deposition that Officer Paul "turned and kind of planted on the ground towards [him]," and when Mr. Economus tried to lean away from him, he felt Officer Paul "bump against the back of [Mr. Economus'] shoulder." Dkt. No. 128-10, Ex. 10 at 72:10–13. And based on its review of the video evidence, *see* Dkt. No. 99-14, Ex. J and Dkt. No. 99-15, Ex. K, the Court does not agree with Defendants

6

that the record definitively shows that Officer Paul's conduct was unintentional.[4] Therefore, the Court finds there is a genuine dispute of fact as to whether Officer Paul's conduct was an accident or whether he intentionally stepped into Mr. Economus's path to inflict harm.

For support, Defendants cite to *Russian v. City of Chicago*, No. 12 C 6889, 2014 WL 7205456 (N.D. Ill. Dec. 18, 2014), an out-of-circuit case involving drag racing in which the district court found that a collision was not a seizure under the Fourth Amendment. Mot. at 7. However, even setting aside that *Russian* is not binding authority, there are several key facts that distinguish that case from this one. In *Russian*, an officer drove northbound in a southbound lane to issue a ticket to the plaintiff for drag racing. *Id*. at *2. It was undisputed that plaintiff was stationary on his motorcycle when the officer moved into the southbound lane. *Id*. The plaintiff did not start moving southbound until *after* the officer was already traveling northbound. *Id*. Based on these specific facts, the district court held that "no reasonable jury could find that [defendant] intended to cause the collision by driving into the southbound lane or knew that a collision would be unavoidable," since the officer started moving first. *Id*. at *4. That is not the case in this action. Mr. Economus was already skating down the hill when Officer Paul stepped into the intersection. Dkt. No. 128-10, Ex. 10 at 72:3–9. One reading of the video evidence could be that Officer Paul stepped into the intersection, saw Mr. Economus coming, turned towards him, and intentionally acted as a roadblock to collide with or "shoulder check" Mr. Economus. *See* Dkt. No. 99-14, Ex. J; Dkt. No. 128-10, Ex. 10 at 72:10–13.

Defendants also argue that using the word "'intentional' is conclusory here and lacking in evidence." Mot. at 7. But the question at summary judgment is not which party presents more or weightier evidence, but "whether there is a genuine issue for trial." And the Court, in reviewing the evidence in the light most favorable to Plaintiff, concludes that there is a genuine issue as to whether Officer Paul intentionally placed himself in the middle of the intersection in order to terminate Mr. Economus' freedom of movement. *See Brower*, 489 U.S. at 597.

---

[4] Video evidence was filed manually with the Court. *See* Dkt. No. 106.

7

### 2. Excessive Force

A finding of a seizure is not enough to impose liability: the seizure also must be "unreasonable." *Id*. at 599. To determine the constitutionality of a seizure, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). The Ninth Circuit has held that the question of reasonableness of force is usually a question of fact to be determined by the jury. *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994); *see also Boyd v. City of Hermosa Beach*, No. CV0410528AGJTLX, 2007 WL 9717629, at *6 (C.D. Cal. Sept. 11, 2007), *aff'd*, 321 F. App'x 584 (9th Cir. 2009) (juries "are better equipped to make the determinations of credibility that are often critical to these [excessive force] cases").

The Court cannot say at this stage that, as a matter of law, the force Officer Paul used was reasonable. Defendants contend that it was "reasonable for Paul to walk in the street in the course of his duties as a law enforcement officer," and "reasonable for Paul, in the two seconds or less after he saw the Plaintiff, to brace for impact." Mot. at 10. Mr. Economus alleges that viewing Officer Paul's conduct under the totality of the circumstances, it was unreasonable for him to move into the middle of the intersection to knock Mr. Economus from his board when Mr. Economus was traveling at a high rate of speed. Opp. at 17. The video evidence is inconclusive and does not resolve this genuine dispute of fact. Thus, the Court cannot find that Officer Paul's alleged use of force was reasonable as a matter of law. *See Boyd*, 2007 WL 9717629, at *5 ("Such a determination on the merits of this claim requires credibility determinations that must be decided by a jury.").

### 3. Qualified Immunity

Defendants further argue that summary judgment is appropriate on the Fourth Amendment claim in any event because Officer Paul is entitled to qualified immunity. Mot. at 10. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court

considering a claim of qualified immunity makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and (2) whether such right was clearly established at the time of the defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 535 U.S. 194, 201 (2001)). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the nonmovant. *See Tolan*, 572 U.S. at 656.

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (citation omitted). The inquiry into whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id*. "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation and quotations omitted).

A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent, the court should look to all available decisional law, including the law of other circuits and district courts. *See id.* Unpublished district court decisions may also "inform" the court's analysis. *Sorrels v. McKee*, 290 F.3d 965, 971–72 (9th Cir. 2002). It will, however, "be a rare instance in which, absent any published opinions on point or overwhelming

9

1   obviousness of illegality, [the court] can conclude that the law was clearly established on the basis

2   of unpublished decisions only." *Id.* Post-incident cases generally are not relevant unless they

3   determine the law at the time of the incident. *See Osolinski*, 92 F.3d at 936 (citation omitted).

4       Having found a genuine issue of fact as to whether Officer Paul's actions violated the

5   Constitution, the Court addresses whether the contours of the asserted right were clearly

6   established at the time of his conduct. *See Pearson*, 555 U.S. at 232. In analyzing this prong, the

7   Court is mindful of the Supreme Court's caution against articulating general formulations rather

8   than identifying specific precedent that addresses similar circumstances. *See City of Escondido,*

9   *Cal. v. Emmons*, 139 S. Ct. 500, 504 (2019) ("[W]e have stressed the need to identify a case where

10  an officer acting under similar circumstances was held to have violated the Fourth Amendment. ...

11  While there does not have to be a case directly on point, existing precedent must place the

12  lawfulness of the particular [action] beyond debate.") (quotations omitted and brackets in

13  original).

14      Plaintiff argues that under *Graham v. Connor*, 490 U.S. 386 (1989), it would be "clear to a

15  reasonable officer" that Officer Paul's conduct was unlawful. Opp. at 21. Further, Plaintiff

16  contends that *Brower* clearly established that a police officer cannot "stop[] persons moving at a

17  fast rate [such] that their conduct and force can be considered unreasonable in its application."

18  Opp. at 21. The Court agrees with Defendants that Plaintiff's asserted "clearly established right"

19  is the type of "generality repeatedly rejected by the Supreme Court." Reply at 8. The Supreme

20  Court has made clear that the correct inquiry in qualified immunity cases is whether it was clearly

21  established that the Fourth Amendment prohibited the officer's conduct "in the situation [he]

22  confronted." *Mullenix*, 136 S. Ct. at 309. General formulations, such as the principle that a police

23  officer may not use force against an individual who does not pose a sufficient threat of harm to the

24  officer or others, have been repeatedly rejected by the Supreme Court as a basis for denying

25  qualified immunity. *Id*. at 308–09 (quotations omitted). Identifying *Graham* as sufficient

26  precedent also has been expressly rejected by the Supreme Court. *White v. Paul*, 137 S.Ct. 548,

27  552 (2017) ("we have held that *Garner* and *Graham* do not by themselves create clearly

28  established law outside 'an obvious case.'"). The Court thus finds that Plaintiff's articulation of

10

1  the purportedly "clearly established law" Officer Paul violated is inadequate under this clear and
2  controlling precedent.

3  Plaintiff also relies on *Glenn v. Washington Cty.*, 673 F.3d 864 (9th Cir. 2011), to contend
4  that the law was "clearly established that the officers are required to consider and use reasonable
5  less intrusive options, especially in a non-urgent situation, before using force that carries the risk
6  of serious bodily harm and/or death." Opp. at 21. But *Glenn* is highly distinguishable from this
7  case. In *Glenn*, an officer used a beanbag shotgun to shoot a suicidal teenager carrying a knife
8  because the officer believed the teenager posed an immediate threat to officers and bystanders.
9  *Glenn*, 673 F.3d at 873. The Ninth Circuit held that one factor in determining reasonableness was
10 whether warnings were audible to the teenager. *Id*. at 876. None of the facts in *Glenn* resemble
11 those in this case, and when analyzing qualified immunity, the Court must look to precedent that
12 reads on the situation at hand. *See Mullenix*, 136 S. Ct. at 309. *Glenn* therefore does not, as
13 Plaintiff claims, constitute clearly established law in a case where, as Plaintiff himself describes it,
14 an officer "shoulder check[s] a skateboarder from a sanctioned skateboard event as he went down
15 the hill." *See* Opp. at 21.

16 The Court recognizes the harshness of granting qualified immunity here: but for that
17 doctrine, this action would proceed to a jury trial, because there is a genuine dispute of material
18 fact as to whether Officer Paul committed a Fourth Amendment violation. But while Defendants
19 are not entitled to qualified immunity "simply because there is no case on all fours prohibiting this
20 particular manifestation of unconstitutional conduct," *see San Jose Charter of Hells Angels*
21 *Motorcycle Club v. City of San Jose*, 492 F.3d 962 (9th Cir. 2005), Plaintiff has not proffered *any*
22 helpful caselaw in support of his contention that the law was clearly established. While the Court
23 notes that some cases have held that officers cannot gratuitously inflict harm on an individual who
24 is non-threatening, these cases do not, as the Supreme Court mandates, place the lawfulness of
25 Officer Paul's conduct in the specific situation he confronted "beyond debate." *See, e.g.*, *Boyd v.*
26 *City of Hermosa Beach*, 321 F. App'x 584, 586 (9th Cir. 2009) (police officer who pushed non-
27 threatening plaintiff who was peacefully trying to leave the police station was not entitled to
28 qualified immunity); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (police officer cannot

forcefully shove an innocent citizen into a car when there was no provocation whatsoever). Given the Supreme Court's direction not to rely on cases that are "distinguishable in a fair way from the facts presented in the case at hand," the Court cannot find that *Boyd* and *Clash* constitute clearly established law that made it "beyond debate" that Officer Paul's actions, even if intended to inflict some harm on Plaintiff, were unconstitutional. *See Saucier*, 121 S. Ct. at 2157; *see also White*, 137 S.Ct. at 552 (the existence of a "unique set of facts and circumstances [ ] alone should have been an important indication to the majority that [defendant's] conduct did not violate a clearly established right.") (quotations omitted).

Accordingly, the Court is compelled to find that Officer Paul is entitled to qualified immunity, and **GRANTS** Defendants' motion for summary judgment as to the Fourth Amendment claim.

### ii. The Court Declines to Exercise Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (citation and internal quotations omitted). Having granted summary judgment as to Plaintiff's only federal claims, the Court, in its discretion, declines to assert supplemental jurisdiction over the remaining state law claims. Accordingly, Plaintiff's remaining state law claims are **DISMISSED** without prejudice to Plaintiff asserting them in state court.

### III. MOTION TO SEAL

Also pending before the Court are Defendants' motion to file under seal records attached to their motion for summary judgment, *see* Dkt. No. 100, and Plaintiff's motion to file under seal records attached to his opposition to Defendants' motion for summary judgment, *see* Dkt. No. 120. The Court addresses each motion in turn.

12

**A. Legal Standard**

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id. at 1179* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

The Court must "balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* Civil Local Rule 79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal must "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law . . . The request must be narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b).

Records attached to nondispositive motions, however, are not subject to the strong presumption of access. *See Kamakana*, 447 F.3d at 1179. Because such records "are often

13

unrelated, or only tangentially related, to the underlying cause of action," parties moving to seal must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure. *Id.* at 1179–80 (quotation omitted). This requires only a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

### B. Defendants' Motion to File Under Seal

Defendants seek to file under seal three exhibits attached to their motion for summary judgment, Exhibits A and B to the Declaration of Sarah Hawkins ("Hawkins Declaration") and Exhibit B to the Declaration of Rebecca Bers ("Bers Declaration"), and to file a redacted version of their motion for summary judgment with references to the provisionally sealed exhibits redacted. Because Defendants move to file exhibits attached to a dispositive motion, the Court will apply the compelling reason standard.

#### i. Exhibits A and B to the Hawkins Declaration

Exhibits A and B to the Hawkins Declaration are complaint summary reports for Officer Paul from the Department of Police Accountability ("DPA"). Dkt. No. 100 at 2–3. Exhibit A is a complaint summary report that contains the findings of the DPA for the incident at issue, and Exhibit B is a complaint summary report for a completely separate event in 2015. *Id.* In their motion, Defendants contend that the exhibits should be filed under seal because they have designated these exhibits as "Confidential," and the DPA reports are subject to official information privilege. *Id.* at 3. Their declaration in support of the motion also confirms that Exhibits A and B were designated as "Confidential." Dkt. No. 100-1.

A designation of "Confidential" alone is not sufficient to establish that a document is sealable. Civ. L. R. 79-5(d)(1)(A). In addition, although federal common law recognizes a qualified privilege for official information, this privilege is neither automatic nor absolute, and courts must weigh the "potential benefits of disclosure against the potential disadvantages."

*Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990). The balancing test "is moderately pre-weighted in favor of disclosure." *Kelly v. San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987).

With those standards in mind, the Court finds that there is a compelling interest in sealing Exhibit B, but not Exhibit A. Defendants contend that the two DPA reports are part of Officer Paul's confidential personnel file and would constitute an unwarranted invasion of his privacy if these were introduced into the public realm. Dkt. No. 100 at 2–3. Defendants also cite to a number of California statutes and allege that the reports are privileged. However, Defendants must do more than make a conclusory assertion that the documents implicate privacy interests and are privileged. *See Kamakana*, 447 F.3d at 1186 (affirming denial of motion to seal documents that city asserted were subject to "the law enforcement privilege, the official information privilege, privacy interests, and embarrassment," because "none of these had been asserted with sufficient particularity" as to how disclosure would inflict any specific prejudice or harm). Upon review, the Court finds that Exhibit A is highly relevant to this action and does not divulge the private information of personnel unrelated to this action. Nor does it reveal any personally identifiable information about Officer Paul. Rather, Exhibit A reflects facts that are already in the record. *See Doe v. City of San Diego*, No. 12-CV-689-MMA-DHB, 2014 WL 1921742, at *6 (S.D. Cal. May 14, 2014) (no compelling reason to keep under seal an internal affairs investigation report that echoes facts in the record). Accordingly, sealing Exhibit A in its entirety is not "narrowly tailored" as to seal only sealable material, required by Civil Local Rule 79-5.

Exhibit B, on the other hand, is a DPA report from 2015 that is not relevant to the Court's determination of Defendants' summary judgment motion, as Exhibit B is only relevant to Plaintiff's *Monell* claim, which Plaintiff has conceded. *See City of San Diego*, 2014 WL 1921742, at *4 (exhibit's disclosure of personal information and irrelevance to the matter are compelling reasons to seal the exhibit). Because Exhibit B divulges sensitive information about Officer Paul that is completely unrelated to this action, the Court finds that there is a compelling reason to file Exhibit B to the Hawkins Declaration under seal.

####  ii. Exhibit B to the Bers Declaration

Defendant also seeks to file under seal Exhibit B to the Bers Declaration, excerpts from Officer Paul's deposition that contain discussions of his medical condition and history. Dkt. No. 100 at 3–4. The exhibit has been designated "Confidential" by Defendants. The Court finds that protecting Officer Paul's privacy interest in his confidential medical information outweighs the public's interest in access to this information. The Court agrees with Defendants that there is no genuine public interest in access to Officer Paul's medical information. *See A.C. v. City of Santa Clara*, No. 13-CV-03276-HSG, 2015 WL 4076364, at *2 (N.D. Cal. July 2, 2015).

For the reasons stated above, the Court **DENIES** the motion to file under seal Exhibit A to the Hawkins Declaration, and **GRANTS** the motion to file under seal Exhibit B to the Hawkins Declaration and Exhibit B to the Bers Declaration. It is then reasonable to redact information from Defendants' motion for summary judgment that references those exhibits filed under seal.

### C. Plaintiff's Motion to File Under Seal

Plaintiff seeks to file under seal Exhibit 1 to the Declaration of Patrick Buelna ("Buelna Declaration"), which is Officer Juan Fernandez's body camera footage taken during the July 11, 2017 skateboarding event. Dkt. No. 120 at 2. The only basis Plaintiff proffers for sealing is that "Defendant [ ] has designated the body camera footage [ ] as 'CONFIDENTIAL.'" *Id.* Plaintiff's declaration in support of the motion similarly states Plaintiff seeks to file Exhibit 1 under seal "because Defendant [ ] has designated the video as 'CONFIDENTIAL." Dkt. No. 120-4 ¶ 2. Defendants did not file a declaration establishing that Exhibit 1 was sealable.

The Court finds that Plaintiff's cursory justification does not adequately plead a "particularized showing" of "specific prejudice or harm." *See Phillips*, 307 F.3d at 1210–11 (citation and quotations omitted); *see also* Fed. R. Civ. P. 26(c). As already discussed, designation of "Confidential" is not sufficient, as "Confidential" is merely the parties' initial designation of confidentiality to establish coverage under the stipulated protective order. *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-cv-05501-SI, 2015 WL 5117083, at *5 (N.D. Cal. Aug. 31, 2015) ("But good cause 'cannot be established simply by showing that the document is subject to a protective order or by stating in general terms that the material is considered to be

confidential'") (quoting *Bain v. AstraZeneca LP*, No. 09-cv-4147, 2011 WL 482767, at *1 (N.D. Cal. Feb. 7, 2011)). Thus, Plaintiff's motion does not comply with Civil Local Rule 79-5(d)(1)(A). In addition, as the designating party for the materials in Exhibit 1, Defendants did not comply with Civil Local Rule 79-5(e)(1), because it did not file a Declaration within four days of Plaintiff's motion. *See* Civ. L.R. 79-5(e)(1).

The Court therefore **DENIES** Plaintiff's motion to seal Exhibit 1.

## IV. CONCLUSION

The Court finds that Officer Paul is entitled to qualified immunity as a matter of law and therefore **GRANTS** Defendants' motion for summary judgment as to the Fourth Amendment claim. *See* Dkt. No. 99. The Court also **GRANTS** Defendants' unopposed motion for summary judgment on Plaintiff's *Monell* claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state claims and **DISMISSES** those claims without prejudice to Plaintiff asserting them in state court.

The Court also **GRANTS IN PART AND DENIES IN PART** Defendants' administrative motion to file under seal, *see* Dkt. No. 100, and **DENIES** Plaintiff's administrative motion to file under seal, *see* Dkt. No. 120. The Court **DIRECTS** Defendants to file, within two days of the date of this order, a public version of Exhibit A to the Hawkins Declaration, *see* Dkt. No. 100-8, and of the motion for summary judgment without redactions of the references to Exhibit A. Pursuant to Civil Local Rule 79-5(f)(1), documents filed under seal as to which the administrative motions are granted will remain under seal. The Court also **DIRECTS** Plaintiff to file, within two days of the date of this order, a public version of Exhibit 1 to the Buelna Declaration. *See* Dkt. No. 120-1.

The Court directs the Clerk to enter judgment in Defendants' favor and close the case. All other pending motions are terminated as moot.

**IT IS SO ORDERED.**

Dated: 4/3/2019

*[signature]*
HAYWOOD S. GILLIAM, JR.
United States District Judge

17